## Case No. 15,189.

UNITED STATES v. GARLINGHOUSE et al.

[4 Ben. 194; [1] 11 Int. Rev. Rec. 11; 2 Chi. Leg. News, 131, 139.]

District Court, N. D. New York. May, 1870.

INTERNAL REVENUE—BOND—MARRIED WOMAN—LEX LOCI CONTRACTUS.

1. The defendant Garlinghouse, a married woman, as principal, and the defendants Munger

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and Gulick. as sureties, executed, on the 9th of March, 1866, at Canandaigua, in the state of New York, a bond, conditioned according to the requirements of the internal revenue laws of the United States relating to bonded warehouses. To the declaration, which was in debt upon this bond, alleging breaches of the condition, the defendants severally pleaded that at the time of the making of the bond, the defendant was, and still .continued to be, the wife of one Leman B. Garlinghouse. To the plea of the sureties the United States replied, that at the time of the delivery of the bond, the defendant G. was engaged in the business of a distiller at Canandaigua, on her separate account, and separate and apart from her said husband, and that she gave the bond in the proper carrying on of said business. To the plea of the defendant G. the United States replied, in addition to the allegations just stated, that for the successful prosecution of her separate business it was necessary for the defendant G. to have a bonded warehouse, under the laws of the United States: that she applied therefor: and that she executed the bond according to the requirements of those laws. The defendants demurred to these pleas, and issue was joined on these demurrers. *Held*, that a bond, voluntarily given to the United States to secure the performance of any corporate act, or the discharge of any public, official, or private duty, is valid and binding, if the United States, in their political and corporate capacity, have a legal pecuniary interest in the performance of the condition of such bond, although the bond is not expressly required or authorized by any act of congress.

2. The capacity of a party to contract depending on the law of the place where the contract is made, the validity of the bond in question, so far as it depended on the capacity of the defendant G. to make it, was to be governed by the law of the state of New York, and, under that law, was valid and binding upon her.

3. Under the laws of this state, G. was authorized to carry on the business of a distiller on her own account, and for her own benefit: and, the acts of congress having required that in order to make the warehouse of the defendant G. a legal bonded warehouse, under the laws of the United States, she should execute such a bond with sureties as was here in question, she acquired, by the very virtue of the acts themselves (even if she did not possess it without reference to them) legal capacity to bind herself by such a bond as she had made here, and the bond was valid under those laws by necessary implication.

The declaration in this case was in debt, upon a bond, in the penalty of $20,000, executed by the defendant Garlinghouse as principal, and by the other defendants as her sureties, on the 9th of March, 1866, at Canandaigua, in the Northern district of New York; and such bond was subject to the conditions, thereunder written, that if the said defendant, Martha A. Garlinghouse, should comply, in all respects, with the provisions and requirements of the warehousing and internal revenue laws of the United States, and the regulations of the treasury department made in pursuance thereof, and should not store, in the premises, described in the application made by her for a bonded warehouse, any goods, wares, or merchandise other than those manufactured or produced by her, and ordered to be placed therein by the collector, or his officer having charge thereof; and should pay to the said collector monthly the salary of the officer having charge of

such goods, and should exonerate and hold the United States and its officers harmless therefrom or on account of any risk, loss, or expense of any kind or description connected with or arising from the deposit or keeping of any goods, wares, or merchandise in the said warehouse; and should not remove, or suffer to be removed, from said warehouse any goods, wares, or merchandise stored therein, without lawful permit, and without the presence of the officer having charge thereof; or, in case of such removal, should pay to the collector of internal revenue for the district the value of the merchandise so removed, and five thousand dollars as liquidated damages for such removal: then such obligation was to be void. The declaration assigned breaches of this condition. No question upon the form of the bond, or of the declaration, or the sufficiency of the assignment of such breaches, was made. To this declaration, the defendants [Merrick] Munger and [Egbert] Gulick—after over of the bond and condition, and after taking issue by their first plea upon the assignment of breaches—pleaded, secondly, that the said Martha A. Garlinghouse, at the time of the making of the said bond or writing obligatory, was, and still continued to be, the wife of one Leman B. Garlinghouse. The defendant Garlinghouse also pleaded her coverture, in the same form. To the second plea of the defendants Munger and Gulick, the United States replied, that, at the time of the execution and delivery of the said bond by the said defendants, the said defendant Martha A. Garlinghouse was, and for a long time previous thereto had been, engaged in and carried on the business of a distiller, at Canandaigua aforesaid, on her separate account, which said business the said defendant Martha A. Garlinghouse had maintained and carried on as and for her sole and separate use and behoof and profit, and as and for her separate trade, business, and occupation, separate and apart from her said husband; and that she gave, made and executed the said bond, at the time and in the manner aforesaid, in the proper carrying on of her said business, so carried on by her, on her separate account, as aforesaid. There was a similar replication to the plea of the defendant Garlinghouse; but the last-mentioned replication also contained further allegations, in substance, that in order to the successful prosecution of the said separate trade and business of said Martha A. Garlinghouse, it became necessary for her to have a bonded warehouse established, pursuant to the acts of congress in such case made and provided; and that she made application therefor, and was thereupon required to execute such a bond with sureties; and did thereupon execute such bond, with her said sureties, as by law required. To these replications the defendants demurred, and the plaintiffs joined in demurrer. Upon the argument of the demurrer, it was not denied that the

principal in the bond, though a married woman, might, under the statute of the state of New York, lawfully carry on the business of a distiller, for her own separate use and benefit, and might lawfully make all ordinary contracts with private persons in respect to such business; nor was it alleged that such contracts would not be binding upon her, and upon her separate estate and property, or that she could not be prosecuted to judgment thereon, in the proper form of civil action at law, as much as if she had been a feme sole; but it was insisted on behalf of the defendants, that the bond declared on, being executed to the United States, must be governed by the common law, and not by the laws of the state of New York; and was void, as against both the principal and the sureties.

H. G. Cheesebro, counsel for defendants, made and argued the following points in support of this position:

First. The bond, being executed under the United States laws, is to be governed by those laws, and not by the laws of the state in which it chanced to be executed. Cox v. U. S., 6 Pet. [31 U. S.] 172, 203, 204; Ableman v. Booth, 21 How. [62 U. S.] 506.

Second. There being no statute law of the United States, on the subject of the execution of bonds by married women, the courts of the United States must be governed by the rules of the common law, in deciding questions of that kind. 1 Kent. Comm. 341; Ludlam v. Ludlam, 26 N. Y. 361.

Third. By the common law the bond of a married woman is void; and, there being no other law to govern this case, the bond in question is, against Mrs. Garlinghouse, null and void. Fowler v. Shearer, 7 Mass. 14; Daniel v. Rose, 1 Nott & McC. 33; Martin v. Dwelly, 6 Wend. 14; 1 Pars. Cont. 286.

Fourth. The bond, being void as against the principal, is void as against the sureties. 1 Poth. Obl. pt. 2, c. 6, § 1. marg. pp. 366, 370, 377; Id. (2d Am. Ed.) marg. p. 196; Chit. Cont. 199.

W. Dorsheimer, U. S. Dist. Atty.

HALL, District Judge. The only question argued on this demurrer, and the only one it is intended now to decide, is whether, under the facts admitted by the pleadings, the bond declared on is void by reason of the coverture of Mrs. Garlinghouse, the principal obligor.

This question may properly be considered under two aspects: First, as presented under the common law and the laws of the state of New York alone, without regard to the effect of the act of congress under which it was executed; and, secondly, as presented under the provisions of the act of congress, in addition to the common law and the statutes of New York.

In considering this question, independent of the legislation of congress, as affecting the capacity of Mrs. Garlinghouse to bind herself by the bond declared on, it is proper first to dispose of the objection, urged upon the argument, that the United States cannot take a valid bond except under the express authority of an act of congress. I have lately had occasion to examine the question presented by such objection, and regard it as a well and firmly-established doctrine that a bond, voluntarily given to the United States to secure the performance of any lawful act, or the discharge of any public, official, or private duty, is valid and binding, if the United States in their political and corporate capacity have a legal pecuniary interest in the performance of the condition of such bond, although such bond is not required by any act of congress. The United States, the different states of the Union, and all municipal corporations, may legally take a bond, with sureties, for the faithful performance, by an individual, of all lawful contracts made with them, and in the performance of which they have a direct pecuniary corporate interest. In this respect, they may take the same measures for their security as might be taken by an individual for his own security in similar cases; and whenever any tax is legally imposed by the United States, they may take security, by bond, for the payment of such tax, or for the proper accounting therefor, by the officer who collects it, in the absence of any congressional legislation upon the subject of such security. In U. S. v. Maurice [Case No. 15,747], Mr. Chief Justice Marshall declared that the capacity of the United States to contract was co-extensive with the duties and powers of government; that every contract which subserved to the performance of a duty might be rightfully made; that a contract executed by an individual, and received by the government, was prima facie evidence that it was entered into by proper parties; and that the authority of an agent or officer of the government, employed in making the contract, is acknowledged by the individual when he makes the contract, and by the United States when the government asserts any right under it. These doctrines were substantially recognized by Mr. Justice Washington, in U. S. v. Howell [Id. 15,405], by the supreme court of the United States, in U. S. v. Tingay, 5 Pet. [30 U. S.] 115, in U. S. v. Bradley, 10 Pet. [35 U. S.] 343, in U. S. v. Linn, 15 Pet. [40 U. S.] 290, and in Tyler v. Hand, 7 How. [48 U. S.] 573. Indeed, the validity of such bonds would seem to be unquestionable, even if there were no direct authority upon the question. No maxim is more clearly established in law, or in reason, than that wherever the end is required, the means are authorized (The Federalist, No. 44); and the taking of a bond, with sureties, is one of the ordinary means of securing the payment of a debt, or the performance of a duty. And sovereignties and states, as well as mu-

nicipal corporations and individuals, have, unless prohibited by law. the right to take such security within the scope of their general authority, or in the just exercise of their constitutional or corporate powers.

Assuming, then, that the United States may properly take the bond of a feme sole, or other person, having capacity to contract, according to the law which must determine that capacity, it is proper to inquire by what law the question of such capacity is to be determined in the present case.

In the case of Cox v. U. S. [6 Pet. (31 U. S.) 172], cited by the defendants' counsel, as above stated, it was declared to be a well settled general rule, "that the law of the place where the contract is made, and not where the action is brought, is to govern in expounding and enforcing the contract, unless the parties have a view to its being executed elsewhere; in which case it is to be governed according to the law of the place, where it is to be executed." And it was declared that, admitting the bond in that case to have been signed at New Orleans, it was very clear that the obligations imposed upon the parties thereby looked for its execution to the city of Washington; that the accountability of the principal as a navy agent, was to be at the seat of government; that the bond was given with reference to the laws of the United States, which required such navy agent to account with the treasury department, at the seat of government; that he was bound to pay over such sum as might be found due to the treasury department, or in such manner as should be directed by the secretary; and that, in every point of view in which it could be considered, the contract of the obligors was to be executed at the city of Washington, and that, therefore, the liability of the parties must be governed by the rules of the common law, which were in force at Washington. The case of Cox v. U. S., and the case of Duncan v. U. S., 7 Pet. [32 U. S.] 435 (which was a suit upon a paymaster's bond, and which, so far as the question under discussion is concerned, was decided upon the same principles as that of Cox v. U. S.), are, therefore, in entire accordance with the almost uniform course of decision upon such questions. Alves v. Hodgson, 7 Term R. 242; Smith v. Smith, 2 Johns. 235, 241; Thompson v. Ketcham, 4 Johns. 285; Lodge v. Phelps, 1 Johns. Cas. 139; Thompson v. Ketchum, 8 Johns. 190; Hicks v. Brown, 12 Johns. 142; Hyde v. Goodnow, 3 Comst. [3 N. Y.] 266.

But in most of these cases the obligation, or legal effect, of the engagement, rather than the capacity of the obligor to enter into the contract, was in controversy; and the question of capacity to contract depends upon the law of the place where the contract is made, rather than upon the law of the place where it is by its terms to be performed.

In this case the bond is alleged, and admitted by the pleadings, to have been made at Canandaigua, in the state of New York; and it bears upon its face an admission that that was the place of residence—the domicile —of the obligors. And the contract was by its terms to be performed in the state of New York. The domicile of the obligors, and the place of the execution of the contract, as well as the place where it was to be performed, being the same, the question whether the lex loci contractus or the lex domicilii is to determine the capacity of the parties to enter into the contract, (upon which the common law and most continental jurists disagree) does not arise; and the capacity of the obligors to enter into the contract, and the validity and extent of its obligations, are to be determined by the laws of New York.

Mr. Justice Story, in his "Conflict of Laws," has discussed this question and reviewed the authorities at great length, and with his usual ability; and in section 241, he says: "The law, which is to govern in relation to the capacity of the parties to enter into a contract, has been already fully considered. It has been shown that, although foreign jurists generally hold that the law of the domicile ought to govern in regard to the capacity of persons to contract, yet that the common law holds a different doctrine. viz.: that the lex loci contractus is to govern." Again in section 242, he says: "Generally speaking. the validity of a contract is to be decided by the law of the place where it is made." And, again, in section 263, he says, "that the law of the place of the contract is to govern as to the nature of the obligation and the interpretation of the contract."

Mr. Justice Story states some exceptions to these rules, among which is the one referred to in the case of Cox v. U. S., that the law of the place where the contract is to be executed (that is, performed) should govern in determining the nature and extent of its obligation. Sections 233, etc.

It would be idle to attempt to add anything to the discussion of this subject by Mr. Justice Story; but it may properly be said that the positions stated are fully sustained by later authorities. A few of these will be referred to.

"All questions of minority or majority, incapacity consequent on coverture, emancipation, and other personal qualities and disabilities, are governed by the lex loci contractus, or the law of the place where the contract is made or the act done." Levi. Merc. Law, p. 41, cl. 47. citing Walker v. Witter, 1 Doug. 6; Martin v. Nicolls, 3 Sim. 458.

Westlake, in his valuable work on Private International Law, says (pages 386, 387): "The validity of a contract. made out of England. with regard to the personal capacity of the contractor, will be referred in our courts to the lex loc' contractus;" and Chancellor Kent (2 Comm. 455) says: "A contract valid

by the law of the place where it is made, is, generally speaking, valid everywhere, jure gentium and by tacit consent. The lex loci contractus controls the nature, construction, and validity of the contract; and on this broad foundation the law of contracts, founded on necessity and commercial convenience, is said to have been originally established." At pages 457, 458, he says: "It may be laid down as a settled doctrine of public law, that personal contracts are to have the same validity, interpretation, and obligatory force in every other country, which they have in the country where they are made." And at page 458 he says: "So, also, the personal incompetency of individuals to contract, as in the case of infancy, and the general capacity of parties to contract, depend as a general rule upon the law of the place of contract." And see Thompson v. Ketchum, 8 Johns. 190; Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 520; and Townsend v. Jamison, 9 How. [50 U. S.] 407, 414.

Under the authorities, and for the reasons already stated, the demurrers would be overruled, if there were no other ground upon which the validity of the bond declared on could be maintained. It may, nevertheless, be well to consider the case in the other aspect to which reference has been already made, and to determine the effect of the act of congress under which the bond was taken, upon the question of the capacity of Mrs. Garlinghouse to enter into the contract.

The laws of this state clearly authorized her to engage in and carry on the business of a distiller upon her own account, and for her sole benefit, separate from the business of her husband; and under such laws she might make with an individual any contract for the procurement or use of a warehouse to enable her to carry on such business. The act of congress, however, required that, before such warehouse could be legally established as a bonded warehouse, she should execute a bond, with sureties, as prescribed in that act; and the requirement of such a bond necessarily authorizes its execution, and also by implication, as a necessary consequence, renders such bond valid. By requiring such bond of a married woman who might carry on the business of a distiller for her sole and separate benefit, under the laws of any state, congress incidentally and necessarily conferred upon her (if she had not that capacity before) the legal capacity to bind herself by such bond, for otherwise the execution of the bond would be a nugatory act, and the object and purpose of congress in requiring such bond would be defeated.

It is, in principle, like the case of a contract of enlistment made by a minor, under acts of congress providing for enlistments without declaring the capacity of minors to enter into a contract of enlistment, or expressly authorizing their enlistment, but which, nevertheless, recognize the practice of their enlistment, without requiring the consent of their parents or guardians. In such cases, the acts of congress, authorizing or recognizing such enlistments, give to the minor, by necessary implication, legal capacity to enter into such contract, and establish their validity when made. U. S. v. Bainbridge [Case No. 14,497]. Upon the same principle it has been held that when a statute obliged an infant to indemnify a city, town, or county against the expenses of supporting his illegitimate child, and made it necessary for him to enter into a bond with sureties for that purpose, as the only means by which he could be discharged from arrest, such statute gave the infant legal capacity to make a binding obligation for that purpose. People v. Moores, 4 Denio, 518. And see People v. Mullin. 25 Wend. 698.

In Baker v. Lovett, 6 Mass. 80, Parsons, C. J., said, "Infants are bound by all acts which they are obliged by law to do," and I know of no good reason why the same should not be applied to the acts of a married woman.

The right of the United States to sue upon a contract made with it, without any express authority of an act of congress, was established as early as 1818, in the case of Dugan v. U. S., 3 Wheat. [16 U. S.] 172, 181.

In respect to the second point made by the defendants' counsel, it may be proper to remark that the courts of the United States are governed by the rules of the common law, because the common law is in force in the state or territory where the cause of action arose or is to be enforced, and not because the common law has been adopted by the United States, or has under the laws of the United States any binding force except as being the law of some state, territory, or district. In the case of Wheaton v. Peters, which was argued at great length by Mr. Paine and Mr. Webster for Mr. Wheaton, and Mr. J. R. Ingersoll and Mr. Sergeant for Mr. Peters, Mr. Justice McLean, in delivering the opinion of the court, said (8 Pet. [33 U. S.] 638): "It is clear there can be no common law of the United States The federal government is composed of twenty-four sovereign and independent states, each of which may have its local usages, customs, and common law. There is no principle which pervades the Union, and has the authority of law, that is not embodied in the constitution or laws of the Union. The common law could be made a part of our federal system only by legislative adoption. When, therefore, a common law right is asserted, we must look to the state in which the controversy originated." And see Kendall v. U. S., 12 Pet. [37 U. S.] 524; Lorman v. Clarke [Case No. 8,516]; and Pennsylvania v. Wheeling Bridge Co., 13 How. [54 U. S.] 518, 564.

The case of Cox v. U. S., ubi supra, so far as it adopted the common law as the rule of decision, therefore proceeded upon the ground that the common law was in force in Maryland at the time of the cession by that state of the territory in which the treasury depart-

ment was situated, and continued to be in force in that part of the District of Columbia after such cession, and not upon the ground that the common law furnished the rule of decision in every state in all cases where contracts with the United States were in controversy. See Kendall v. U. S.; ubi supra.

The conclusions already stated render it unnecessary to consider the other points made by the defendants' counsel. The United States must have judgment upon the demurrer, with leave to the defendants to amend their pleadings within twenty days, on payment of costs